UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JEFFREY B. ALLEN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) No. 2:13-cv-00358-JMS-DKL |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Jeffrey B. Allen applied for supplemental security income and disability insurance benefits (collectively, "disability benefits") from the Social Security Administration ("SSA") on September 21, 2010, alleging a disability onset date of January 1, 2007. A hearing was held on February 15, 2012, in front of Administrative Law Judge Albert J. Velasquez (the "ALJ"), who determined that Mr. Allen was not entitled to receive disability benefits. [Filing No. 14-2 at 48-66.] The Appeals Council denied review, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. Mr. Allen has filed this civil action pursuant to 42 U.S.C. § 405(g), asking the Court to review his denial of benefits.[1] [Filing No. 1.]

**I.**
**BACKGROUND**

Mr. Allen was forty-four years old as of his onset date. [Filing No. 14-6 at 2.] Previously, he had worked as a driver for UPS from 1984 to 2004. [Filing No. 14-2 at 4; Filing No. 14-2 at 8.] Mr. Allen claims he has been disabled since January 1, 2007, because of a

---

[1] Mr. Allen filed the brief supporting his petition for review as a "Motion for Summary Judgment," [Filing No. 18], but the Court will apply the well-established standards for reviewing a social security decision.

1

variety of physical and mental impairments that will be discussed as necessary below.[2] [Filing No. 14-6 at 5.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520, the ALJ issued an opinion on March 23, 2012. [Filing No. 14-2 at 48-66.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Allen had not engaged in substantial gainful activity[3] after the alleged disability onset date. [Filing No. 14-2 at 50.]

- At Step Two, the ALJ found that Mr. Allen suffered from the severe impairments of obesity, osteoarthritis with bone spurs and bursitis in his right shoulder, headaches, osteoarthritis in his right ankle and right knee, non-insulin dependent diabetes mellitus, irritable bowel syndrome with occasional diarrhea, bipolar disorder, anxiety, and psychotic disorder. [Filing No. 14-2 at 50.]

- At Step Three, the ALJ found that Mr. Allen did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [Filing No. 14-2 at 51.] The ALJ concluded that Mr. Allen had the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, to stand and walk for six hours in an eight-hour workday, and to sit for six hours in an eight-hour workday. The ALJ concluded

---

[2] Mr. Allen detailed pertinent facts in his opening brief, which the Commissioner does not dispute. [Filing No. 24 at 1.] Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Allen, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as necessary to address the parties' arguments.

[3] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

that Mr. Allen had the RFC to stand, walk, and sit, provided that the work requires no work above shoulder height with the right dominant hand, no more than occasional climbing of stairs and ramps, no climbing of ropes, ladders, or scaffolds, and no more than occasional balancing, stooping, crouching, with no kneeling or crawling. The ALJ also concluded that Mr. Allen should avoid work at unprotected heights, around dangerous moving machinery, or operating a motor vehicle, or work around open flames or large bodies of water. Lastly, the ALJ concluded that Mr. Allen's work tasks should be simple and repetitive in nature and should not require more than superficial interaction with the public, co-workers, or supervisors. [Filing No. 14-2 at 53-54.]

- At Step Four, the ALJ found that Mr. Allen was unable to perform any of his past relevant work. [Filing No. 14-2 at 59.]

- At Step Five, the ALJ found that considering Mr. Allen's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. Specifically, the ALJ found that Mr. Allen would be capable of working as a parking lot attendant, mailroom clerk, or shipping and receiving clerk. [Filing No. 14-2 at 60.]

Because of these findings, the ALJ concluded that Mr. Allen was not disabled. [Filing No. 14-2 at 61.] Mr. Allen requested that the Appeals Council review the ALJ's decision, but on May 17, 2013, the Council denied that request. [Filing No. 14-2 at 40.] That decision is the final decision of the Commissioner for purposes of judicial review, and Mr. Allen seeks relief from this Court. [Filing No. 19 at 1.]

# II.
## STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F. 3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant . . . currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment . . . one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, . . . can he perform his past relevant work, and (5) is the claimant . . . capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). "An affirmative answer leads either to the next step, or, on Steps Three and Five, to a finding that the claimant is disabled. A negative answer at any point, other than Step Three, ends the inquiry and leads to a

determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating all limitations that arise from medically determinable impairments, even those that are not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

# III.
## DISCUSSION

Mr. Allen raises three general arguments on appeal: (1) that the ALJ's RFC is not supported by substantial evidence, [Filing No. 19 at 7-11]; (2) that the ALJ's adverse credibility determination is erroneous, [Filing No. 19 at 11-13]; and (3) that the ALJ's finding at Step Five is erroneous, [Filing No. 19 at 13-15]. The Court will address each argument in turn.

**A. Substantial Evidence for RFC**

Mr. Allen argues that the ALJ's RFC determination is not supported by substantial evidence. [Filing No. 19 at 7-11.] Mr. Allen challenges the ALJ's RFC determination on three general grounds, and the Court will address each in turn. [Filing No. 19 at 7-11.]

*1) Evidence of Headaches and IBS*

First, Mr. Allen argues that the ALJ erred by failing to account for limitations from his headaches and IBS in his RFC or in the questions to the vocational expert. [Filing No. 19 at 7-8.] Mr. Allen points out that the ALJ found those impairments to be severe but then allegedly failed to account for the associated functional limitations in Mr. Allen's RFC. [Filing No. 7-8.]

5

In response, the Commissioner emphasizes that an ALJ is not required to address every piece of evidence. [Filing No. 24 at 4.] She contends that the ALJ accounted for all medically determinable impairments and met the allegedly "lax" standard set forth by the Seventh Circuit Court of Appeals. [Filing No. 24 at 4.] The Commissioner also argues that the ALJ was not required to submit a list of all impairments to the vocational expert and that any error on this point is harmless. [Filing No. 24 at 5.]

Although an ALJ need not discuss every piece of evidence in the record, he "may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004)). The ALJ must consider the aggregate effect of the claimant's "entire constellation of ailments," including those that in isolation are not severe. *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003); *see also* 20 C.F.R § 404.1545(e) (the ALJ "will consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's RFC].)"

The ALJ specifically found Mr. Allen's headaches and IBS to be severe impairments. [Filing No. 14-2 at 50.] Mr. Allen testified that he missed two to three days per month from headaches when he was working at UPS, [Filing No. 14-2 at 22], and that he suffers from diarrhea that forces him to frequently use the bathroom and that sometimes he "can't make it to the bathroom," [Filing No. 14-2 at 4-5; Filing No. 14-2 at 15.] Mr. Allen argues that the ALJ ignored this evidence of functional limitations when determining his RFC, [Filing No. 19 at 8], which the Commissioner does not dispute, [Filing No. 24 at 5-6.] Instead, the Commissioner argues that the ALJ need not mention every piece of evidence, specifically Mr. Allen's testimony regarding functional limitations that are not supported by the medical records. [Filing No. 24 at 4-5.]

The Court finds the ALJ's decision to be inconsistent to the extent it considers Mr. Allen's headaches and IBS to be severe impairments but then ignores Mr. Allen's testimony regarding the functional limitations associated with those severe impairments without explaining why. Although the Court agrees that the ALJ need not specifically mention every piece of evidence, he does need to build a logical bridge from the evidence to his conclusion, *Villano*, 556 F.3d at 562, and cannot just ignore contrary evidence, *Terry*, 580 F.3d at 477. Moreover, the ALJ cannot reject a claimant's statements about the effects of his symptoms on his ability to work simply because the available objective medical evidence does not substantiate the statements. 20 C.F.R. § 404.1529(c)(2).

The Court recognizes that, as the Commissioner points out, the ALJ made an adverse credibility determination regarding Mr. Allen. [Filing No. 24 at 4 (citing Filing No. 14-2 at 55).] But for reasons explained later in this opinion, the Court finds reversible error related to the sufficiency of the ALJ's explanation of that finding. Thus, the Commissioner cannot rely on it to support the ALJ's failure to not address the functional limitations related to Mr. Allen's severe impairments of headaches and IBS.

For these reasons, the Court finds that the ALJ erred by not addressing Mr. Allen's severe impairments of headaches and IBS when determining the RFC. Had the ALJ considered the alleged functional limitations associated with those impairments, he may have reached a different result. [*See* Filing No. 14-2 at 27 (vocational expert's testimony that a hypothetical person missing two to three days per month "similar to what the claimant testified to" would be precluded from identified jobs).] Therefore, the Court cannot say that the ALJ's error was harmless.

### 2) Right Upper Extremity Limitations

Mr. Allen argues that the ALJ erred by failing to sufficiently explain the opinion weight he gave certain medical sources with regard to limitations of Mr. Allen's right upper extremity. [Filing No. 19 at 9.] Specifically, Mr. Allen contends that the ALJ gave great weight to the opinion of consultative examiner Dr. Shuyan Wang, who opined that Mr. Allen was "partially limited" due to his right upper extremity and could not use it above shoulder level, but allegedly afforded little weight to the opinions of the State agency sources without sufficiently explaining why. [Filing No. 19 at 9 (citing Filing No. 14-2 at 59).]

In response, the Commissioner notes that Mr. Allen's RFC accounts for his right upper extremity limitations by precluding him from any work "above shoulder height with the right dominant hand." [Filing No. 24 at 6 (citing Filing No. 14-2 at 53-54).] The Commissioner points out that Dr. Wang and the State agency physicians (Drs. Sands and Corcoran) all opined that Mr. Allen should not reach overhead with his right extremity and that Mr. Allen's RFC accounted for that limitation. [Filing No. 24 at 6 (citing Filing No. 14-7 at 65 (Dr. Sands' opinion precluding overhead reaching due to limitations in only the right shoulder); Filing No. 14-7 at 73 (Dr. Corcoran's opinion affirming Dr. Sands' opinion)).] Thus, the Commissioner contends that Mr. Allen "has not identified a meaningful inconsistency between the ALJ's findings and these doctors' opinions." [Filing No. 24 at 6.]

Mr. Allen tries to establish a meaningful inconsistency in his reply brief, but the Court finds that he has failed to do so. In fact, after reviewing the records, the Court disagrees with Mr. Allen that the ALJ afforded the relevant opinions of the State agency physicians little weight with regard to Mr. Allen's right upper extremity limitations. The portion of the ALJ's opinion to which Mr. Allen cites references the opinions of State agency physicians Drs. Sands and

Corcoran. [Filing No. 19 at 9 (citing Filing No. 14-2 at 59).] Like Dr. Wang, those doctors opined that Mr. Allen was limited by his right shoulder impairment and should be precluded from reaching overhead with that extremity. [Filing No. 24 at 6 (citing Filing No. 14-7 at 65 (Dr. Sands' opinion precluding overhead reaching due to limitations in only the right shoulder); Filing No. 14-7 at 73 (Dr. Corcoran's opinion affirming Dr. Sands' opinion)).] The ALJ does not afford those opinions little weight and, instead, references them in his decision, [Filing No. 14-2 at 59], and accounts for the noted limitations in Mr. Allen's RFC, [Filing No. 14-2 at 54]. The only opinion to which the ALJ gives little weight is the opinion of a State agency *psychologist*, which is irrelevant to Mr. Allen's right arm limitations. [Filing No. 14-2 at 59 (ALJ specifically stating that he is according "little weight to the State agency *psychologists'* opinions ….").] For these reasons, the Court rejects Mr. Allen's argument regarding the weight given to opinions about his right shoulder impairment.

### 3) Mental Impairments

Mr. Allen argues that the ALJ erred in analyzing the evidence regarding functional limitations due to mental impairments. [Filing No. 19 at 9-10; Filing No. 25 at 4-6.] Mr. Allen challenges the ALJ's decision to give "some weight" to the December 2010 findings of State agency physician Dr. Albert Fink, pointing out that there is evidence that his symptoms worsened after that assessment. [Filing No. 19 at 10 (referencing Filing No. 14-2 at 58).] Mr. Allen also challenges the ALJ's decision to only give "some weight" to the opinion of Joy Callison, a licensed clinical social worker who performed an assessment in 2012. [Filing No. 19 at 10-11 (referencing Filing No. 14-2 at 30-32).]

The Commissioner responds that the ALJ adequately detailed the medical evidence regarding Mr. Allen's mental limitations in his opinion. [Filing No. 24 at 7-9.] She argues that

9

mere treatment does not prove disability, that the ALJ gave "greater restrictions" than Dr. Fink's opinion justified, and that Mr. Allen "plays vocational expert" by assuming that one of the jobs identified would require more social interaction than allowed by the RFC. [Filing No. 24 at 7-9.]

The Court agrees with the Commissioner that the ALJ adequately detailed the treatment findings of Dr. Fink and Ms. Callison and accounted for them in the RFC. The ALJ summarized Dr. Fink's December 2010 findings and ultimately afforded them "some weight," noting that the RFC was actually "more restrictive than these functional limitations." [Filing No. 14-2 at 57-58 (ALJ's summary of Dr. Fink's assessment and opinion).] The ALJ also summarized the medical evidence from the time period after Dr. Fink's assessment. [Filing No. 14-2 at 56-57.] He noted that Mr. Allen went to an emergency room in April 2011 and was diagnosed with bipolar disorder and prescribed medication. [Filing No. 14-2 at 56-57.] The ALJ cited medical records from follow up visits confirming that Mr. Allen subsequently improved on the prescribed medication. [Filing No. 14-2 at 57 (citing, among others, Filing No. 14-8 at 4; Filing No. 14-8 at 14).] Ultimately, the ALJ gave "some weight" to the opinion of Ms. Callison, particularly noting her opinion that Mr. Allen had moderate limitations in his ability to make work-related decisions, carry out complex instructions, and interact with others. [Filing No. 14-2 at 59 (citing Filing No. 14-8 at 30-31).]

The ALJ accounted for Mr. Allen's mental limitations by including a restriction in his RFC that Mr. Allen's work tasks "should be simple and repetitive in nature and should not require more than superficial interaction with the public, co-workers, or supervisors." [Filing No. 14-2 at 54.] Mr. Allen's complaint about the ALJ's decision to give "some weight" to Dr. Fink's assessment is that there is evidence in the record that Mr. Allen's symptoms worsened after Dr. Fink's assessment. [Filing No. 19 at 10.] But the ALJ acknowledged that evidence,

[Filing No. 14-2 at 56-57], and even noted that the RFC he crafted for Mr. Allen "is more restrictive than these functional limitations" proposed by Dr. Fink, [Filing No. 14-2 at 58], which Mr. Allen does not dispute. Instead, Mr. Allen argues that the ALJ erred by failing to reconcile that statement with his decision to give "some weight" to the opinion of Dr. Fink, but any error in that regard works in favor of Mr. Allen since it resulted in a more restrictive RFC than Dr. Fink's opinions support.

Mr. Allen also argues that the ALJ did not adequately take into account the opinion of licensed social worker Ms. Callison, specifically her opinion that Mr. Allen had moderate impairments interacting with the public, supervisors, and co-workers. [Filing No. 19 at 10-11 (citing Filing No. 14-8 at 31).] Mr. Allen emphasizes Ms. Callison's comment that Mr. Allen sometimes socially isolates himself "for weeks" at a time and argues this precludes full-time employment. [Filing No. 19 at 11 (citing Filing No. 14-8 at 31).] But Mr. Allen ignores that Ms. Callison made that comment to support her conclusion that he had "moderate" limitations interacting with others; thus, her opinion accounts for that behavior. [Filing No. 14-8 at 31.]

The Court rejects Mr. Allen's speculative argument that one of the identified jobs—parking lot attendant—ignores the social interaction limitation in Mr. Allen's RFC because "presumably" it would require interaction with others. [Filing No. 19 at 11; Filing No. 25 at 6.] Mr. Allen does not cite anything other than his own speculation for that point, and as the Commissioner points out, no medical opinion precludes Mr. Allen from all interaction with the public, supervisors, and co-workers. [Filing No. 24 at 9.] For these reasons, the Court rejects

Mr. Allen's arguments regarding the weight the ALJ gave to the opinions of Dr. Fink and Ms. Callison.[4]

### B. Adverse Credibility Determination

Mr. Allen argues that the ALJ's adverse credibility determination is erroneous for two reasons. [Filing No. 19 at 11.] First, Mr. Allen contends that the ALJ erred by primarily relying on evidence of Mr. Allen's independence in his activities of daily living. [Filing No. 19 at 11-12.] Second, Mr. Allen contends that the ALJ failed to minimally articulate his reasons for finding that Mr. Allen's self-reported complaints were not credible. [Filing No. 19 at 12-13.]

In response, the Commissioner argues that the ALJ reasonably found that Mr. Allen's ability to perform daily activities, even with some limitations and pain, cut against his credibility. [Filing No. 24 at 12.] The Commissioner emphasizes that the ALJ can rely somewhat on evidence of activities of daily living and that while Social Security Ruling 96-7p provides factors for an ALJ to consider in his credibility determination, the ALJ is not required to analyze every factor. [Filing No. 24 at 11.]

An ALJ is in the best position to determine the credibility of witnesses, and the Court reviews that determination deferentially. *Craft*, 539 F.3d at 678. That said, the ALJ's determination of credibility must contain specific reasons for the finding. *Id.* The finding must be supported by the evidence and must be specific enough to enable the claimant and the Court to understand the reasoning. *Id.*

---

[4] Though it is not well-developed in his brief, Mr. Allen notes that the ALJ accounted for Mr. Allen's mental limitations in concentration by limiting him to tasks that are "simple and repetitive in nature." [Filing No. 25 at 6 (citing Filing No. 14-2 at 54).] On remand, the Court reminds the ALJ that limitations of concentration, persistence, and pace are not adequately accounted for by restricting a claimant to "simple, routine tasks that do not require constant interactions with coworkers or the general public." *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009).

"[A]lthough it is appropriate for an ALJ to consider a claimant's daily activities when evaluating his credibility . . . this must be done with care. . . . [A] person's ability to perform daily activities . . . does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). With activities of daily living, the claimant "can get help from other persons" and "is not held to a minimum standard of performance, as [he] would be by an employer." *Id.*; *see also Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010) ("But an ability to engage in 'activities of daily living' (with only mild limitations) need not translate into an ability to work full time. In this case it may mean nothing more than that Spiva can survive outside a mental institution or halfway house. Whether he can work full time as a "stocker"—the only type of job that the administrative law judge mentioned—is the question, and she offered no basis for her answer.").

The Court agrees with Mr. Allen that the ALJ did not sufficiently support his adverse credibility determination. [Filing No. 14-2 at 55.] Immediately after summarizing Mr. Allen's independence in activities of daily living, the ALJ made the following adverse credibility finding:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity.

[Filing No. 14-2 at 55.] This language is very similar to the "meaningless boilerplate" that has been repeatedly criticized by the Seventh Circuit Court of Appeals. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). And like in *Bjornson*, the ALJ in Mr. Allen's case failed to link this

13

conclusory statement to the evidence in the record or tailor it to the facts at hand. *Id.* Because the ALJ used the boilerplate language immediately after detailing Mr. Allen's independence in activities of daily living, his opinion suggests that he heavily (perhaps exclusively) relied on those activities to make the credibility determination.[5] [Filing No. 14-2 at 55.] That was error, particularly because the ALJ did not offer a basis for how those activities translate into an ability to work full time. *Spiva*, 628 F.3d at 351-52.

The ALJ also erred in his analysis when he made an RFC finding first and then used the RFC as a tool to assess Mr. Allen's credibility, stating that Mr. Allen's complaints were not credible "to the extent that they are inconsistent with the above [RFC] assessment." [Filing No. 14-2 at 55.] "The applicant's credibility . . . cannot be ignored in determining [his RFC]." *Bjornson*, 671 F.3d at 646. The claimant's RFC hinges partly on the ALJ's assessment of his credibility and, consequently, it improper to determine the RFC before assessing the claimant's credibility. *Id.* Thus, the ALJ in Mr. Allen's case erred in the same way as the ALJ in *Bjornson* because his RFC assessment relied on his belief that Mr. Allen's complaints were not credible but the template he used indicates that he assessed Mr. Allen's RFC without considering his credibility. *Id.* at 645-46.

For these reasons, the Court finds that the ALJ insufficiently articulated the reasons supporting his adverse credibility determination.

---

[5] Later in his opinion, the ALJ lists the factors he must consider in addition to the objective medical evidence when assessing the credibility of Mr. Allen's statements. [Filing No. 14-2 at 58 (citing 20 C.F.R. 404.1529(c), 20 C.F.R. 416.929(c)).] After citing those factors, the ALJ again details Mr. Allen's activities of daily living, concluding that he functions "quite independently." [Filing No. 14-2 at 58-59.] The ALJ does not expressly consider any of the other listed factors after discussing the activities of daily living. While the Commissioner argues that the ALJ did not need to address every factor, [Filing No. 24 at 11], the ALJ's opinion suggests that Mr. Allen's activities of daily living was the only factor he considered in making the adverse credibility determination.

14

**C. Step Five Error**

Mr. Allen's remaining arguments focus on alleged errors in the ALJ's Step Five determination. [Filing No. 19 at 13-15.] Specifically, he argues that the ALJ provided incomplete hypotheticals to the vocational expert and that the vocational expert's testimony contains conflicts that affect whether significant jobs exist for Mr. Allen. [Filing No. 19 at 13-15.] The Commissioner defends the ALJ's Step Five analysis. [Filing No. 24 at 14-18.]

Given the multiple bases for reversal that the Court has already discussed, the Court will not go into further detail regarding the alleged Step Five errors. Instead, the Court reminds the ALJ that on remand he must pose hypothetical questions to the vocational expert that include all limitations supported by Mr. Allen's medical evidence. *See Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) ("Hypothetical questions posed to vocational experts ordinarily must include *all* limitations supported by medical evidence in the record.") (emphasis in original).

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Mr. Allen benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). The Clerk is directed to **TERMINATE** Mr. Allen's motion. [Filing No. 18.] Final judgment will issue accordingly.

**Electronic Distribution via CM/ECF:**

Meredith E. Marcus
DALEY DISABILITY LAW P.C.
mmarcus@fdaleylaw.com

Frederick J. Daley, Jr.
DALEY DISABILITY LAW P.C.
fdaley@fdaleylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov